IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| SOMSAK SAEKU, | § | |
| (No. A039065507) | § | |
|     Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 1:16-CV-155-O |
| | § | |
| JIMMY JOHNSON,[1] Warden, | § | |
| Prairieland Detention Center, | § | |
|     Respondent. | § | |

## OPINION AND ORDER

Before the Court is the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 filed by Petitioner, Somsak Saeku, a detainee in the custody of Immigration and Customs Enforcement (ICE) at the Prairieland Detention Center in Alvarado, Texas. The Respondent filed a response along with an appendix containing copies of several documents related to Saeku's underlying convictions, and records of the removal proceedings before the Board of Immigration Appeals (BIA). Response, ECF No 5; Appendix to Response, ECF No. 6, at 1-2; ECF No.6-1, at 1-34. Petitioner then filed a reply and a supplemental reply. ECF Nos. 7 and 8. Petitioner also filed two motions to supplement the pleadings; a motion to update case development (ECF No. 10), and a motion for leave to file

---

[1] Petitioner initially named several respondents including Marcello Villegas, the Warden of the facility he was then housed within (the Rolling Plains Detention Center); then Attorney General Loretta Lynch, Jeh Johnson, then Secretary of the Department of Homeland Security, Simona L. Flores, Field Operations Director, Immigration and Customs Enforcement (ICE), and John A. Schultz, listed as Chief of the DHS Headquarters. Petition, ECF No. 1, at 2-3. But the proper respondent in a § 2241 proceeding "is the warden of the facility where the prisoner is being held, not the Attorney General or some other supervisory official." *Rumsfled v. Padilla*, 542 U.S. 426, 435 (2004); *see also Maldonado v. Macias,* No.EP-15-CV-221-KC, 2015 WL 8958848, at *4 (W.D. Tex. Dec. 15, 2015) (Loretta Lynch is a remote supervisory official and not a proper respondent under *Padilla*). Thus, all named persons other than the appropriate warden should be dismissed.

A review of the Department of Homeland Security website locator service, and Court telephone inquiry, shows that Somsak Saeku is now housed at the Prairieland Detention Center in Alvarado, Texas. The Warden of that facility is Jimmy Johnson. ==The Clerk of Court should list as the only respondent Jimmy Johnson.==

supplemental documents (ECF No. 13). These two motions will be granted to the extent the Court has reviewed and considered the supplemental documents. In response to a Court Order, the Respondent also filed a supplemental response with appendix. ECF Nos. 14, 15. After considering the pleadings and relief sought by Petitioner, the response as supplemented with available records, and the reply as supplemented, the Court has concluded that the petition should be denied. [2]

**I. FACTS/BACKGROUND**

On August 15, 2006 United States Immigration and Customs Enforcement (ICE) initiated removal proceedings against Somsak Saeku by issuing a Notice to Appear (NTA). App., ECF No. 6-1, at 1. That document shows that Saeku is a citizen and native of Thailand, and that he entered the United States as a lawful permanent resident on April 28, 1985. *Id.* The document also shows that Saeku was convicted of larceny and sentenced to 30 days' imprisonment in North Carolina state district court on March 28, 2001. *Id.* at 3. Subsequently, on May 21, 2002, Saeku was convicted of two counts of larceny and sentenced to 120 days' imprisonment and 12 months probation. *Id*. Saeku was charged with being removable under 8 U.S.C. § 1227(a)(2)(A)(ii) for having committed at least two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct. *Id.* at 3. Saeku failed to appear for his hearing and was ordered removed *in absentia* on February 20, 2007. *Id.* at 4. Saeku appealed the order, and on December 31, 2009, the Bureau of Immigration Appeals (BIA) found that Saeku had not received proper notice of the removal hearing and remanded the case to the immigration judge. *Id.* at 13-14.

---

[2]Petitioner also filed two motions seeking an expedited ruling. ECF Nos. 9, 11. As the Court has now resolved the § 2241 petition, these motions will be denied as moot.

During this same approximate time period, however, Saeku was found guilty of two counts of wire fraud, in violation of 18 U.S.C. § 1343, and one count of interstate transportation of stolen property, in violation 18 U.S.C. § 2314, in the United States District Court for the Eastern District of North Carolina. App. (Judgment), ECF No. 6-1, at 5-10. On November 12, 2008, Saeku was sentenced to a term of 108 months' imprisonment in the Bureau of Prisons (BOP). *Id.* at 6; *see United States v. Saeku*, No. 5:07-CR-304-1BO (E.D. N.C. Nov. 12, 2008).[3]

While Saeku was serving his federal term of imprisonment, on April 15, 2010, the immigration court held a hearing which was ordered as a result of the BIA remand. *Id.* at 15. The immigration judge again ordered Saeku removed *in absentia. Id.* at 16. On February 2, 2016 the BOP released Saeku to ICE. *Id.* at 34. The Respondent reports that on or about March 30, 2016, a bond hearing was held. The immigration judge denied bond because Saeku was subject to a final order of removal. After Saeku was released into ICE custody following the completion of his term of federal imprisonment, however, ICE recognized that the *in absentia* removal order entered in April 2010 needed to be reopened because Saeku had been in federal custody at the time of that removal hearing. *Id.* at 19-20. Even though he was subject to a removal order, ICE informed the Immigration Court that it did not want to proceed with the removal because the removal order was arguably invalid under 8 U.S.C. § 1229a(b)(5)(C) [provision for rescission of order in removal proceeding if alien was in Federal custody] and 8 C.F.R § 1003.23(b)(4)(ii) ("An order entered in absentia pursuant to section 240(b)(5) may be rescinded upon a motion to reopen filed at any time if … the alien demonstrates that he or she was in Federal or state custody and the failure to appear

---

[3]The Court takes judicial notice of the records of the court in *United States v. Saeku,* No.5:07-CR-0304-1BO (E.D.N.C. Nov. 12, 2008). *See* Fed. R. Evid. 201(b)(2) and (c)(1).

3

was through no fault of the alien"). *Id.* at 20. As a result, on April 1, 2016, ICE filed a motion to reopen the removal proceeding and to change venue to Dallas, where Saeku was then located. *Id.* at 17. The effect of the filing of the motion to reopen was to automatically stay Saeku's removal. *See* 8 U.S.C. § 1229a(b)(5)(C) ("The filing of the motion to reopen . . .shall stay the removal of the alien pending disposition of the motion by the immigration judge").

On May 12, 2016 a bond hearing was held. *Id.* at 31. No bond was granted because Saeku's detention was mandatory. *Id.; see* 8 U.S.C. § 1231(a)(2) ("Under no circumstances during the removal period shall the Attorney General release an alien who has been found . . . deportable under § 1227(a)(2)"). Saeku waived appeal of that decision. App. ECF No. 6-1, at 31. On August 31, 2016, an immigration judge granted the motion to reopen and to change venue. *Id.* at 32. A master calendar hearing was held on September 29, 2016. *Id.* at 33. The case was re-set to October 25, 2016. *Id.* In a supplemental response, the Respondent has informed the Court that on April 10, 2017 an Immigration Judge ordered Saeku removed to Thailand. Supp. Response, and Appendix, ECF Nos. 14, 15. Saeku, however, reserved his right to appeal, preventing that order from becoming final. *Id.* at 15; *see* 8 C.F.R. § 1003.39 (decision of the Immigration Judge becomes final upon waiver of appeal or expiration of time to appeal). Saeku subsequently timely filed an appeal of the April 10, 2017 removal order. Because the order of removal is on appeal, Saeku remains in pre-order mandatory detention.

## II. GROUNDS FOR RELIEF

In his petition for writ of habeas corpus under 28 U.S.C. § 2241, Somsak Saeku asserts that he is being detained illegally pending his removal to Thailand. He also claims that he has cooperated with efforts to remove him, and that the Thai consulate has refused to issue travel documents. He

also contends that his detention violates *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001) and his due process rights under the Fifth Amendment, and he also contends that his continued detention is in violation of *Demore v. Kim*, 538 U.S. 510, 531 (2003). Saeku seeks release from detention. Pet., ECF no. 1, at 10-11. A review of the record shows that his allegations regarding his removal status are incorrect, and he is not entitled to relief under § 2241.

**III. REVIEW and ANALYSIS**

The Supreme Court has held that an alien does not have a constitutional right to be released from detention during the limited period in which removal proceedings are pending. *Demore v. Kim*, 538 U.S. 510, 531 (2003). The right to release, therefore, is a right granted and controlled by statute. *See generally Carlson v. Landon*, 342 U.S. 524, 532-36 (1952). Specifically, when and under what circumstances an alien may be released while removal proceedings are pending is governed by 8 U.S.C. § 1226(a). Section 1226(a) provides for release in the discretion of the Attorney General "*except as provided in subsection (c).*" 8 U.S.C. § 1226(a) (emphasis added). Subsection 1226(c)(1)(B) requires detention of an alien who has been convicted of at least two crimes of moral turpitude. 8 U.S.C. § 1226(c)(1)(B) (citing 8 U.S.C. § 1227(a)(2)(A)(ii)). As noted above, Saeku has been convicted of at least two crimes of moral turpitude and, therefore, his detention is mandatory pending a final order of removal.

Further, Saeku has not been detained an unreasonable amount of time. His detention by ICE began on February 2, 2016 when he was released from BOP. He was in post-removal order detention until April 1, 2016 when ICE filed the motion to reopen the case to assure that a legal removal order was obtained. His detention at that time, therefore, became pre-order detention. Saeku had been in pre-removal order detention for only a few months when he filed this § 2241 petition in August

2016.

Once the motion to reopen was filed, ICE could not make any efforts to proceed with his removal until a final order of removal was entered. 8 U.S.C. § 1229a(b)(5)(c). Indeed, in Exhibit B to his petition, Saeku admits that the Immigration and Nationalization Act (INA) § 240(b)(5)(c) (codified at 8 U.S.C. § 1229a(b)(5)(c)) stays his removal pending disposition of the motion to reopen. ECF No. 1 at 20. ICE has not removed him because there is no final order of removal, not because removal efforts have failed. ICE has not asked Thailand to issue travel documents. Because there is not a final order of removal, there is no present basis for ICE to obtain travel documents from Thailand officials. To the extent Saeku makes assertions to the contrary, he is mistaken.

In *Zadvydas v. Davis,* 533 U.S. 678, the United States Supreme Court held that section 1231(a)(6) "read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention." *Id*. at 689. The Court designated six months as a presumptively reasonable period of post-order detention, but made clear that the presumption does not mean that every alien not removed must be released after six months. *Id*. at 701. Saeku argues that he is entitled to relief based on *Zadvydas*. But *Zadvydas* is inapplicable here because it concerns post-order removal. The authority to detain aliens after the entry of a final order of removal is set forth in 8 U.S.C. § 1231(a). That statute affords ICE a 90-day period within which to remove the alien from the United States following the entry of the final order. An alien who is inadmissible to the United States or one who is removable under § 1227(a)(2), as Saeku is, however, may be detained beyond the removal period. 8 U.S.C. § 1231(a)(6).

In order for an alien to establish a *prima facie* claim for habeas relief under the *Zadvydas*

rationale, therefore, he must first establish that he has been in post-removal order custody for more than six months at the time the habeas petition is filed. *Apau v. Ashcroft*, 3:02-CV-2652-D, 2003 WL 21801154, at *2 (N.D. Tex. Jun. 17, 2003) (citing *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 and n. 3 (11th Cir. 2002)). Next, the alien must provide a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. *Apau,* 2003 WL 218-1154 at *2 (citing *Zadvydas,* 533 U.S. at 701); *see also Khan v. Fasano*, 194 F. Supp. 2d 1134, 1136 (S.D. Cal. 2001). Where the alien fails to come forward with an initial offer of proof, the petition is ripe for dismissal. *Akinwale*, 287 F.3d at 1051-52. As the Court has not been presented with a final order of removal against Saeku, he cannot show that he was in post-order custody for more than six months at the time the habeas petition was filed. *Zadvydas*, therefore, does not apply to Saeku's detention.

Saeku also asserts that his continued detention is contrary to the Supreme Court's decision in *Demore v. Kim*, 538 U.S. 510, 531 (2003). In *Demore*, the Supreme Court found that mandatory detention "for the limited period of [the alien's] removal proceedings" is constitutional. 538 U.S. at 531. Although 8 U.S.C. § 1226(e) limits the authority of district courts to order the release of persons detained under § 1227(a)(2)(A)(ii), some courts have held that the Supreme Court's use of the language "for the limited period of [the alien's] removal proceedings" implies that, at some point, the length of the detention can become unreasonable and unconstitutional. *See generally Ramirez v. Watkins*, No. 1:10-CV-0126, 2010 WL 6269226, at *1 (S.D. Tex. Nov. 3, 2010) (analyzing cases and noting that "some judges have been willing to entertain the notion that although the detention they are currently reviewing appears reasonable in light of the specific circumstances then before them, that same detention could become unreasonable based on evolving circumstances"), *rep. and*

*rec not reached,* (S.D. Tex. Dec. 8, 2010) (Order dismissing case as moot after Petitioner Ramirez was removed to Mexico on November 22, 2010).

In *Ramirez,* the United States Court for the Southern District of Texas examined case law from across the state and the country. For those courts that believe there is an implicit reasonableness requirement for detention under 1226(c), the court found the majority view is that, until a period of detention has been determined to be unreasonable, a detainee is not entitled to a meaningful individualized review. *See Ramirez*, 2010 WL 6269226, at *14-15. "The circumstances and claims of each specific detainee will govern the outcome of any reasonableness inquiry." *Id*. at *14; *see also Ly v. Hansen*, 351 F.3d 263, 272-73 (6th Cir. 2003) (period of detention was 500 days and actual removal to native country was not reasonably foreseeable). "[T]he reasonableness determination must take into account a given individual detainee's need for more or less time, as well as the exigencies of a particular case." *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 234-35 (3d Cir. 2011) (period of detention was three years; detainee released prior to court's judgment). Factors to be considered when making a reasonableness inquiry include the length of detention, whether the civil detention is for a period longer than the crimes resulting in deportable status, whether actual removal is reasonably foreseeable, whether the immigration authority acted promptly, and whether the petitioner engaged in dilatory tactics in the Immigration Court. *Ramirez,* 2010 WL 6269226, at 14, n.32 (citing *Flores–Powell v. Chadbourne*, 677 F. Supp. 2d 455, 471 (D. Mass. 2010) (internal citation omitted). As to the dilatory nature of Petitioner's underlying action, another court explained:

> [C]ourts must be sensitive to the possibility that dilatory tactics by the removable alien may serve not only to put off the final day of deportation, but also to compel a determination that the alien must be released because of the length of his incarceration. Without consideration of the role of the alien in the delay, we would encourage deportable criminal aliens to raise frivolous objections and string out the proceedings in the hopes that a federal court will find the delay 'unreasonable' and

order their release.

*Ly*, 351 F.3d at 272.

Saeku has been in detention for approximately 18 months, eight of which have been in pre-final removal order detention. The most recent removal order was not entered until April 10, 2017, largely because of continuances Saeku acknowledges that he requested. Saeku May 1, 2017 Declaration, ECF No. 13-1 at 8, ¶¶ 15 – 20; 14 at ¶ 33. According to Saeku's own words, all but one or two continuances were granted at his request. Indeed, he unsuccessfully requested a continuance of the April 10 hearing that resulted in the order of removal. *Id*. at ¶¶ 32- 33. That order is still not a final order because Saeku has taken an appeal. Under review of these circumstances, Saeku's detention is not unreasonable and does not violate his right to due process. *See generally Quintero v. Holder, et al.,* No. SA-14-CA-474-XR (PMA), 2014 WL 4063966, at *4 (W.D. Tex. Aug. 18, 2014) ("Even if this court were to agree with those courts that have found that detention under § 1226(c) may, in some circumstances, become unreasonable and a violation of due process, having considered the facts of this case, the Court finds that the detention has not become unreasonable and that Petitioner has not shown that the detention is likely to become unreasonable in the near future").

**IV. CONCLUSION and ORDER**

In sum, Somsak Saeku is being lawfully detained. His detention is mandatory under section 1226(c)(1)(B). The Supreme Court's *Zadvydas* decision does not apply because there is not yet a final order of removal, and Saeku's detention is not contrary to the Supreme Court's holding in *Demore*. The § 2241 petition must be denied.

It is therefore **ORDERED** that Marcello Villegas, Loretta Lynch, Jeh Johnson, Simona L. Flores,  and John A. Schultz, are **DISMISSED** as improperly named parties.

It is further **ORDERED** that the motions for leave to supplement and to update (ECF Nos. 10 and 13) are **GRANTED** to the extent the Court has considered the supplemental information contained therein. It is further **ORDERED** that the motions to expedite (ECF Nos. 9 and 1) are **DENIED**.

It is further **ORDERED** that the petition under 28 U.S.C. § 2241 is **DENIED**.

**SO ORDERED** on this **14th day** of **September, 2017.**

_____
Reed O'Connor
UNITED STATES DISTRICT JUDGE